# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br>    vs.<br><br>BRENT ROGER WILKES,<br><br>                    Defendant. | CASE NO. 07cr0330-LAB<br><br>**ORDER DENYING DEFENDANT'S APPLICATIONS FOR RULE 17 SUBPOENAS**<br><br>[Doc. Nos. 160, 169] |

## INTRODUCTION

Defendant Brent Roger Wilkes has filed two applications for court authorization to issue subpoenas for 20 prospective witnesses pursuant to Rule 17(b) and (c) of the Federal Rules of Criminal Procedure. The list of prospective witnesses Wilkes seeks to examine include several news reporters, the United States prosecutors who were assigned to prosecute the case against him, a former United States Attorney for this judicial district, and a current United States Attorney for another judicial district and his Executive Assistant. The application is opposed by two of the reporters and by the United States. Having considered the pleadings and the relevant legal authorities, the Court **SUSTAINS** the objections and **DENIES** Wilkes' application for the issuance of subpoenas.

**BACKGROUND**

The request for Rule 17 subpoenas in this case stems from a criminal investigation into the bribing of former United States Congressman Randy "Duke" Cunningham. Cunningham pled guilty to accepting bribes in 2005 and was sentenced to prison. The investigation of the matter continued through 2007, and culminated in an indictment issued on February 13, 2007 charging Wilkes and John T. Michael with conspiracy, honest services wire fraud, and bribing Cunningham, among other crimes.

Before the indictment issued February 13, at least three newspaper articles were published identifying Wilkes as a target of the grand jury probe and predicting he would soon be indicted. For example, an article written by Scot Paltrow appeared in *The Wall Street Journal* on January 19, 2007.[1] Mr. Paltrow identified Mr. Wilkes as "a key figure in the case" who had "become the focus of the investigation," and noted "[p]eople with knowledge of that investigation said prosecutors are bringing last-minute witnesses before a grand jury and expect Mr. Wilkes will be indicted early next month."

A second wire service article detailing allegedly leaked grand jury information was published in the *North County Times* on January 31, 2007.[2] That article quoted two unnamed federal officials saying "the U.S. Attorney's Office in San Diego is close to seeking an indictment against Poway defense contractor Brent Wilkes, who allegedly bribed Randy 'Duke' Cunningham in return for millions of dollars in government contracts...." The source of the information, the article reported, was someone "with intimate knowledge of the case" who "spoke on the condition of anonymity." According to the newspaper's source, a preliminary draft indictment had been circulated and was under review "by many eyes...."

A third wire service article written by reporter Allison Hoffman of the Associated Press appeared on February 1, 2007.[3]  Ms. Hoffman wrote:

---

[1]  The *Wall Street Journal* article is attached as Exhibit H to the government's opposition.

[2] The *North County Times* article is attached as Exhibit I to the government's opposition.

[3]   The February 1, 2007 wire service article by Ms. Hoffman is attached as Exhibit J to the government's opposition. The article also revealed that a second indictment charging Mr. Wilkes and Kyle "Dusty" Foggo with conspiracy and honest services wire fraud was imminent. Approximately two weeks later, on the same day the indictment in this case was returned, an indictment charging Wilkes and Foggo was also returned (*United States*

Federal prosecutors are preparing to seek indictments against … a San Diego defense contractor linked to the bribery scandal that sent former U.S. Rep. Randy "Duke" Cunningham to prison, two government officials familiar with the investigation said Wednesday.

The officials, who spoke to The Associated Press only on the condition of anonymity because grand jury proceedings are secret and the charges have not been finalized, said prosecutors plan to ask a San Diego grand jury to return charges of honest services wire fraud and conspiracy against … Brent Wilkes.

\* \* \* \*

The officials said [an] indictment is being prepared that would charge Wilkes and two other alleged Cunningham co-conspirators – New York businessman Thomas Kontogiannis and his nephew, John T. Michael – with bribery and several conspiracy counts.

The indictments are likely to be returned within the next few weeks, the officials said.

After the indictment against Mr. Wilkes and Mr. Michael was returned, Mr. Wilkes' counsel, Mark Geragos, alerted the Court to the apparent grand jury leaks and sought a hearing to determine the identities of the leakers [*See* Transcript, March 19, 2007, at 41]. The Court agreed at the time to entertain the motion, [*id.*], but thereafter no written motion was filed. Several month later, and shortly before the scheduled trial date, Mr. Geragos made a second oral motion renewing his request for a hearing to determine whether the alleged grand jury leaks might justify dismissal of the indictment against his client, or some other sanction against the government. The Court reiterated its willingness to consider the motion, but deferred scheduling a hearing on the matter because the trial date was imminent. Mr. Wilkes was subsequently tried and convicted by a jury on all counts of the indictment.

Before a jury was impaneled to hear this case, each prospective juror was individually prescreened by the court and the parties for exposure to pretrial publicity. All prospective jurors completed an extensive 18-page questionnaire asking whether they had read anything about the case, whether they knew or had formed an opinion about

v. *Kyle Dustin Foggo and Brent Roger Wilkes,* Crim. No. 07CR00329-LAB). However, even if government officials leaked grand jury information pertaining to the Wilkes-Foggo indictment, it is not apparent how misconduct associated with that case would provide a basis for granting a new trial or dismissing the indictment in this case.

07CR0330

any of the participants in the trial, and whether they held any opinion that Wilkes was either guilty or innocent. In addition, before the jury was finally impaneled in this case, all prospective jurors were personally questioned by the court and counsel regarding whether they had been exposed in advance to any aspect of the case. Of the fifteen people who were ultimately chosen by the parties to hear the case, only four had read or heard anything about it. None had read the aforementioned articles. Presumably for this reason, following voir dire neither Wilkes nor the government attempted to challenge any prospective juror on the ground of exposure to pretrial publicity.

Mr. Wilkes now renews his request for a hearing into the alleged grand jury leaks. He contends the government willfully and deliberately violated the grand jury secrecy obligations imposed by Rule 6(e) of the Federal Rules of Criminal Procedure. He argues that leaking information to the press and public about his case while it was still being considered by the grand jury and before any indictment was returned, amounted to outrageous government conduct which now justifies setting aside the jury's guilty verdicts.

The government objects to Wilkes' application for subpoenas, taking the position the Court should summarily deny the application because Wilkes cannot show he was prejudiced by the grand jury leaks.[4] Seemingly unconcerned by the near-certainty that information relating to a pending grand jury investigation was leaked by one or more government agents in this case, government prosecutors argue that "further judicial inquiry into the circumstances of the alleged leaks is not appropriate at this time." [Government Opposition at 20].[5]

---

[4] This response represents a change of position on the part of the government. When the issue was first raised by Wilkes' counsel at the hearing on March 19, the government prosecutor, Mr. Forge, said "Your honor, I want to make clear to the court ... the leaks of the information to the press were absolutely reprehensible and completely inexcusable." When asked by the Court whether the government was investigating the leaks, Mr. Forge responded:

> I'm not in a position to disclose that in open court, but I will state that nothing
> would please me more than to determine who is responsible for that and get them
> in front of this court to be held accountable for having done that. It's
> embarrassing. It's reprehensible and inexcusable.

[5] In its opposition, the government makes a curious allusion to the prospect of a "potential leak investigation conducted by the Department of Justice." [Government Opposition at 20, n.12.]. The allusion is curious because the Court was informed by a letter dated June 14, 2007, from Carolyn Delaney, Executive Assistant United

1    Two of the reporters that Wilkes seeks to subpoena, Ms. Hoffman and Ms. Lisa

2  Myers, a journalist with NBC News, also object to Wilkes' application and effort to

3  subpoena them. The reporters argue, among other things, that the testimony and

4  information Wilkes seeks from them is protected under the First Amendment and by the

5  California newsreporter shield law. They also adopt and reiterate the principal argument

6  advanced by the government – that because Wilkes cannot show prejudice, a hearing to

7  ascertain who leaked grand jury information is pointless.

8                                          **ANALYSIS**

9    The starting point in the Court's analysis is the ostensible authority for Wilkes'

10 application for subpoenas, Federal Rule of Criminal Procedure 17. That rule instructs the

11 Court to issue subpoenas for witnesses or documents and objects sought by an indigent

12 defendant when necessary for the defendant to mount an adequate defense.[6] Subsection

13 (b) of Rule 17 governs witness subpoenas; subsection (c) pertains to requests for

14 documents and objects. Wilkes has requested that subpoenas issue for both.

15    Rule 17 requires that a subpoena be issued when it is shown what is sought is

16 necessary to present an adequate defense. The burden of proving "necessity" rests with

17 the defendant. *United States v. Smith*, 924 F.2d 889, 896 (9th Cir. 1991). Therefore,

18 Wilkes must establish, as a threshold matter, how the witnesses and documents he seeks

19 to subpoena are relevant and necessary to his defense. Failing to set forth the expected

20 testimony of the proposed witnesses, or otherwise failing to demonstrate how the

21 testimony, documents or objects will likely be relevant and useful to the defense of the

22

23

24 States Attorney for the Eastern District of California, that the Department of Justice had already concluded "no
   further investigation of the [grand jury leaks] is warranted." Ms. Delaney reached this conclusion within 14-days
   of being appointed by the Department of Justice to investigate the leaks. Remarkably, she quickly jettisoned the
25 notion that further investigation was necessary without personally interviewing any of the percipient witnesses,
   and notwithstanding the concession made by one of the assigned trial prosecutors that "embarrassing,"
26 inexcusable," and "reprehensible" leaking of grand jury information had occurred in this case.

27 [6] Although Mr. Wilkes was represented initially by retained counsel, the Court has since granted his application
   for appointed counsel upon finding he is presently indigent. The Court appointed Federal Defenders of San
28 Diego to represent Mr. Wilkes in a second criminal case in which he is charged with Mr. Foggo. The Court also
   provisionally appointed Federal Defenders to assist in Mr. Wilkes' defense in this case.

07CR0330

case, is grounds for denying the request for subpoenas under Rule 17(b) and (c). *United States v. Hernandez-Urista*, 9 F.3d 82, 84 (10th Cir. 1993).

The nature and timing of the hearing in connection with which the witnesses' testimony is sought informs the issue in this case. Having been convicted by a jury, Wilkes must now show the fairness of his trial was prejudiced by the grand jury leaks. In other words, for the expected testimony to be relevant to Wilkes' defense at this stage of the proceedings, he has to demonstrate it will provide the basis for granting him a new trial or dismissing the indictment against him altogether.

Making such a showing, post-trial, is difficult – if not impossible – unless it can be shown the jury was somehow affected or prejudiced. At least two federal courts of appeal have held that prejudicial pretrial publicity does not provide a basis for dismissing an indictment once the defendant has been tried by a petit jury that was untainted by the publicity. *See United States v. Waldon*, 363 F.3d 1103 (11th Cir. 2004) (per curiam); *United States v. Brien*, 617 F.2d 299 (1st Cir. 1980).  Unfortunately for Wilkes, that is exactly the situation here. The jury that decided this case was extensively prescreened by the court and the parties for exposure to pretrial publicity. Through his counsel, Wilkes availed himself of the opportunity to personally and individually question prospective trial jurors about whether they had heard or read about the case. As it turned out, only 4 of the 15 jurors who were impaneled had heard about the case. None had read any of the articles forecasting Wilkes' indictment and the likely charges. Undoubtedly, this is why Wilkes did not seek to excuse any of the prospective trial jurors for cause after voir dire on the ground of exposure to pretrial publicity.

The concern raised by adverse publicity is how it affects the ensuing trial, not the grand jury proceedings. *Waldon*, 363 F.3d at 1109. Here, Wilkes makes no contention that the petit jury that convicted him was at all influenced or affected by information that was improperly leaked before the indictment issued. That being so, no legal basis exists for granting a new trial predicated on allegations of such improper leaking. The verdicts returned by an impartial trial jury in this case vitiated any possible prejudice caused by the

1    grand jury leaks. Necessarily then, eliciting testimony from witnesses that will possibly
2    reveal who leaked information about the impending charges will simply not be relevant to
3    any defense Wilkes might mount at this stage of the proceedings. Nor, then, can it be
4    said such testimony is "necessary" in the Rule 17 sense to any legal remedy Wilkes has
5    available.

6        While this Court shares Wilkes' concern that the breach of grand jury secrecy in
7    this case was improper and a likely violation of Rule 6,[7] violation of grand jury secrecy
8    rules does not, of itself, justify dismissing the indictment. The purposes served by grand
9    jury secrecy are well known, and include: encouraging prospective witnesses to come
10   forward and testify fully and frankly without improper influence in the form of threats or
11   promises; preventing targets of grand jury investigation from being alerted to the scrutiny
12   and fleeing or attempting to influence grand jurors or witnesses; and insuring those
13   investigated but not indicted are saved from "public ridicule." *Douglas Oil Co. v. Petrol*
14   *Stops NW*, 441 U.S. 211, 218-19 (1979). These concerns become much less compelling
15   when, as happened here, the grand jury returns an indictment. *See id.* at 218-19, 222
16   (interest served by grand jury secrecy reduced after indictment); 1 Wright, Federal
17   Practice and Procedure, § 106, at 365-66 (3d ed. 1999). Because the Court finds Wilkes
18   was not prejudiced by the grand jury leaks, ordering dismissal of the indictment would
19   have the effect of granting him an undeserved windfall. *See Bank of Nova Scotia v.*
20   *United States*, 487 U.S. 250, 263 (1988) (remedy for misconduct by government agents
21   should focus "on the culpable individual rather than granting a windfall to the unprejudiced
22   defendant").

23       Putting aside that Wilkes was not prejudiced by the improper leaking of matters
24   before the grand jury, the Court has considered the alternative of relying on its

25

---

26   [7]  It is suggested by one of the reporters opposing the application for subpoenas that the disclosures in this case
     may not have technically violated Rule 6(e) since the information largely related to the intentions of the
27   prosecutors rather than the substance of any grand jury proceeding. [Hoffman Opposition at 10]. The Court
     rejects such a narrow reading of Rule 6. Given the concerns underlying the requirement of grand jury secrecy,
28   it was improper for any government agent with knowledge of the proceedings to leak information identifying Mr.
     Wilkes as the target of the grand jury investigation and to forecast the likely charges and timetable for the
     indictment.

supervisory power to authorize the issuance of the subpoenas, if only to vindicate the public and institutional interests in grand jury secrecy. Clearly, the public interest was at least temporarily compromised in this case by the irresponsible and illegal actions of one or more  government agents who leaked secret grand jury information to news reporters. In the end, however, separation of powers constraints counsel against the Court launching its own investigation into the source of the leaks. *See In re U.S.*, 441 F.3d 44, 58-59 (1st Cir. 2006) (court should ordinarily refrain from conducting its own investigations and refer instances of grand jury misconduct to the Department of Justice for investigation and prosecution). The remedial and supervisory powers of the Court remain limited, even when it appears the "investigation" by the responsible authority has been conducted in a slipshod manner with seeming indifference to the concerns giving rise to the rule of grand jury secrecy. *See* footnote 5.

### CONCLUSION

Summing up, the Court finds that Wilkes was not prejudiced by the alleged government misconduct in this case, and that it had no material affect on the verdict. He is therefore not entitled to a new trial, or to have the indictment dismissed.  *See United States v. Sarkisian*, 197 F.3d 966, 988 (9th Cir. 1999) (where motion for new trial is predicated on allegations of government misconduct, defendant must show that misconduct materially affected the verdict). Because Wilkes cannot show he was prejudiced – and is therefore foreclosed from seeking a new trial or dismissal on the ground of government misconduct – the Rule 17 subpoenas he has requested cannot possibly be necessary to any legal defense he may mount at this stage. Accordingly, the objections lodged by the United States and by reporters Hoffman and Myers to the issuance of  the Rule 17  subpoenas are  **SUSTAINED**.  For the same reasons, the Court

/ / /

/ / /

/ / /

/ / /

declines to authorize subpoenas for any other prospective witness identified in Wilkes' applications.[8]

**IT IS SO ORDERED.**

DATED:  December 3, 2007

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge

---

[8]  Because the Court has determined that Wilkes cannot meet his burden of establishing "necessity" under Rule 17, it does not consider the reporters' arguments that the information sought from them is protected by the First Amendment or by a privilege. The Court notes, however, that the very same arguments were recently considered by the United States District Court for the Northern District of California and rejected. *See In re Grand Jury Subpoenas to Mark Fainaru-Wada and Lance Williams,* No. CR 06-90225-JSW (N.D. Cal. 2006).

07CR0330